UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


DONALD HALL,

                    Plaintiff,

vs.                              Case No.  2:07-cv-313-FtM-36DNF

SECRETARY,    DOC,    PRISON    HEALTH
SERVICES,  INC.,  R.  HEMPHILL,  D.O.,
M.D.,  VIVIAN,  R.N.,  FNU  KOVACH,
R.N.,      LINDA      A.      SCHNITZER,
Practitioner,  A.L.  JOHNSON,  Warden,
and R. TURNER, HSA, Medical,

                    Defendants.
_____/


## OPINION AND ORDER

     This  matter  comes  before  the  Court  upon  review  of  the

following  dispositive  motions:  (1)  Defendants  Hemphill,  Kovach,

Otwell,  and  Turner's  Motion  to  Dismiss  Plaintiff's  Amended

Complaint  (Doc.  #112,  the  "Medical  Defendant's  Motion");  (2)

Defendants the Florida Department of Corrections, Secretary Walter

A.  McNeil,  and  A.L.  Johnson's  Motion  to  Dismiss  Plaintiff's  Amended

Complaint  (Doc.  #113,  the  "the  Department's  Motion");  and  (3)

Prison  Health  Services,  Inc.'s  Motion  to  Dismiss  Plaintiff's

Amended  Complaint  (Doc.  #115,  "PHS  Motion").    Plaintiff  filed

responses  in  opposition  to  each  of  the  dispositive  motions.    *See*

Plaintiff's  opposition  to  the  Medical  Defendants'  Motion  (Doc.

#119),  Plaintiff's  opposition  to  the  Department's  Motion  (Doc.

#120)  and,  Plaintiff's  opposition  to  PHS'  Motion  (Doc.  #121).    For

the reasons set forth more fully herein, the Court grants each of the Defendants' respective Motions.

## I. Background

### A. Amended Complaint

Plaintiff Donald Hall has pending before the Court a *pro se* amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. #109, Amended Complaint). The Amended Complaint alleges First and Eighth Amendment violations stemming from alleged medical indifference to Plaintiff's hypertension disease and retaliation due to Plaintiff's filing of inmate grievances in connection with the same. *See generally* Amended Complaint. The following factual narrative in support of the alleged constitutional violations is set forth in the Amended Complaint.

In January 2003, while at Baker Correctional Institution, Plaintiff was diagnosed with hypertension disease and prescribed medication and treatment. *Id.* at 8.[1] Plaintiff's blood pressure was "abnormal" when he was transferred to Charlotte Correctional on April 26, 2006. *Id.*

On June 5, 2006, Defendant Dr. Hemphill "modified" Plaintiff's medications to normalize Plaintiff's blood pressure ("B.P."). *Id.* at 9. Sometime thereafter, Plaintiff's medications were administered in a "crushed form." *Id.* On October 18, 2006,

_____

[1]The page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

Plaintiff went to medical to inquire who ordered his medications to be "crushed," and "learned" Defendant Schnitzer,[2] a nurse practioner ordered his medications "withheld and crushed prior to [its] administering." *Id.* On October 20, 2006, Plaintiff submitted a grievance to the warden concerning Defendant Schnitzer's "withholding and crushing" of his medications. *Id.* A copy of the October 20, 2006 grievance is attached to the Amended Complaint as Exhibit A (Doc. #1-2 at 1). In his grievance, Plaintiff claimed that the crushing of his medications was for "reprisal for his writing of grievances concerning his medical complaints." Exhibit A to Amended Complaint. On October 27, 2006, Defendants Dr. Hemphill and Johnson responded to Plaintiff's grievance stating that:

> Review of your record while you were taking your medication "whole" showed no control of your blood pressure despite many medication changes. Since [the pills] have [been] crushed, your blood pressure has been controlled. That is why you are receiving the medications crushed. Your blood pressure should have been controlled both ways. This is a MD decision-there are no DOC rules.

---

[2]Plaintiff avers that, in September 2006, Defendant Schnitzer terminated her employment with the Florida Department of Corrections. Although Plaintiff returned service forms for Defendants Schnitzer and Vivian on February 16, 2010, the Court has not directed service upon Defendants Schnitzer or Vivian due to the pending dispositive Motions *See* Docs. ##124-135, and docket entry dated February 16, 2010. The Court will review the Amended Complaint to determine whether the Amended Complaint states a claim against either Defendant Schnitzer or Vivian.

*Id.* at 2. Plaintiff avers that the response is "a mere pretext deliberately designed to elude Plaintiff's complain[t] of reprisal and inadequate medical attention and treatments." Amended Complaint at 10. Plaintiff appealed the denial of his October 20, 2006 grievance to the Secretary of the Department of Corrections. Exhibit A at 3. In response, Plaintiff was advised by the Secretary that "[i]t is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing." *Id.* at 4.

On April 4, 2007, Plaintiff sought medical attention complaining of "inflamation to his throat." Amended Complaint at 10. Plaintiff was seen by an unidentified "doctor" who examined Plaintiff's throat and advised Plaintiff to "tell them to stop crushing your medications and let's see what happens." *Id.* Plaintiff advised the doctor that he needed "to give the order" and the doctor told Plaintiff "he would take care of it." *Id.*

That night, Defendant Kovach "attempted to administer" Plaintiff's medication in the crushed form, and Plaintiff advised Defendant Kovach that the doctor earlier that day had ordered that his medications stop being crushed. *Id.* at 11. Defendant Kovach stated that "the doctor did not order Plaintiff's medications not crushed." *Id.*

At 5:00 a.m. on April 5, 2007, Plaintiff received his medications "not crushed." *Id.* During the lunch medication

rounds, however, Defendant Vivian again attempted to administer Plaintiff's medications in a crushed form, telling him the unidentified doctor could not order his medication not crushed because he was "local" and "did not know their policy or customs." *Id.*

The next morning, Defendant Vivian again tried to give Plaintiff his medication in "crushed" form, which Plaintiff refused. Defendant Vivian attempted to persuade Plaintiff to take the crushed medication but, when he refused, she presented Plaintiff with a "refusal form to all crushed medications," which Plaintiff signed. *Id.* That same day, Plaintiff submitted a grievance objecting to his medications being crushed in contravention to the order issued by the doctor on April 4, 2007. Exhibit B to Amended Complaint (Doc. #1-2 at 5). Plaintiff further stated that he was not refusing to take his medication, but was only refusing to take them in the crushed from. *Id.*[3]

That evening, Plaintiff declared a medical emergency complaining of "chest pains and profuse sweating." *Id.* at 12.

---

[3]The denial of Plaintiff's grievance, dated April 13, 2007, was signed by Defendants Dr. Hemphill and Defendant Johnson and stated that "[y]our medication is crushed at the order of your attending physician." *Id.* at 6. It further advised Plaintiff to "discuss" the issue of the crushing of his medications with the doctor at his next visit. *Id.* Plaintiff appealed the denial of his grievance to the Secretary on April 20, 2007. *Id.* at 7. The Secretary denied Plaintiff's appeal on June 1, 2007, stating that "[i]t is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing." *Id.* at 8.

Plaintiff was taken to medical and examined by an unidentified nurse, who after taking Plaintiff's vitals, released him back to his cell. *Id.*

On April 9, 2007, Plaintiff requested sick call complaining of "hot and cold flashes, sinus uncontrollable, [and] severe headaches," and was seen by Defendant Otwell. *Id.* Defendant Otwell took Plaintiff's vitals, prescribed nasal spray and "cherry flavor syrup for his stomach." *Id.* Plaintiff requested something for his headaches and was told his headaches were caused by Plaintiff's hypertension, for which Plaintiff was refusing treatment. *Id.* Defendant Otwell told Plaintiff "he won't have to worry much longer with pressure that high." *Id.* On April 16, 2007, Plaintiff submitted a grievance concerning his April 9, 2007 visit and complained that Plaintiff has not seen a doctor, despite Otwell's statement that "she was putting the grievant in to see the doctor." Exhibit C to Amended Complaint (Doc. #1-2 at 9).[4]

On May 23, 2007, Plaintiff was seen by Defendant Dr. Hemphill in the medical clinic. Plaintiff's blood-pressure read 190/120.

---

[4]In the response to Plaintiff's grievance, dated April 20, 2007, Plaintiff was advised "[y]ou are on the schedule to be seen several times in the next few weeks as you were informed. Your treatment regime is being followed and no service is being withheld. Please wait for a call out and then you will have an opportunity to ask your question." *Id.* at 10. Plaintiff appealed the denial of his grievance to the Secretary on May 2, 2007. *Id.* at 13. The Secretary denied Plaintiff's appeal the same day, noting that a decision of the issue had already been rendered. *Id.* at 12.

*Id.* at 14.  Dr. Hemphill "renewed Plaintiff's medications to be administered crushed form."  *Id.*  Plaintiff "declined the crushed medications" explaining that, on April 4, 2007, an unidentified doctor stopped the order directing Plaintiff's medications to be crushed.  *Id.*

On May 25, 2007, Plaintiff again was seen by Defendant Dr. Hemphill in the medical clinic.  Plaintiff's blood-pressure read "120/110 without treatment."  *Id.*  After examining Plaintiff, Dr. Hemphill directed that Plaintiff's medications be administered whole.  *Id.*  Thereafter, Plaintiff's blood-pressure was checked and recorded as follows:

| | |
|---|---|
| June 1, 2007 | 100/68 |
| June 6, 2007 | 144/66 |
| June 11, 2007 | 130/80 |
| June 15, 2007 | 130/80 |
| June 18, 2007 | 134/80 (left arm) 150/117 (right arm) |
| June 19, 2007 | 130/80 |
| June 22, 2007 | 134/88 |

On December 19, 2007, Plaintiff was transferred to Santa Rosa Correctional Institution "to dissuade future grievances and lawsuits against [the Department] and its subordinates, injunctive relief, and access to the courts."  That same day, Plaintiff submitted a grievance objecting to his medications being crushed in contravention to the order issued by the doctor on April 4, 2007.

Exhibit B to Amended Complaint (Doc. #1-2 at 5). Plaintiff further stated that he was not refusing to take his medication, but was only refusing to take them in the crushed form. *Id.*[5] As relief, Plaintiff seeks declaratory and unspecified injunctive relief. *Id.* at 16.

## II. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Thus, the Court must accept all factual allegations in Plaintiff's Amended Complaint, as well as the facts set forth in the exhibits attached to his Amended Complaint, as true and take them in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a

---

[5]The denial of Plaintiff's grievance, dated April 13, 2007, was signed by Defendants Dr. Hemphill and Defendant Johnson and stated that "[y]our medication is crushed at the order of your attending physician." *Id.* at 6. It further advised Plaintiff to "discuss" the issue of the crushing of his medications with the doctor at his next visit. *Id.* Plaintiff appealed the denial of his grievance to the Secretary on April 20, 2007. *Id.* at 7. The Secretary denied Plaintiff's appeal on June 1, 2007, stating that "[i]t is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing." *Id.* at 8.

presumption of truth. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951 (2009)(discussing a 12(b)(6) dismissal); *see also Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

To satisfy the pleading requirements of Rule 8, a complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Dura Pharms., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Ashcroft*, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

With respect to § 1983 cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 836-838 (11th Cir. 2004)(citing

*Leatherman v. Tarrant County*, 507 U.S. 163 (1993)); *Laurie v. Ala. Court of Crim. Appeals*, 256 F.3d 1266, 1275-76 (11th Cir. 2001). This heightened pleading standard requires a plaintiff to allege the facts supporting a § 1983 claim with some specificity. *See GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367, 1368 (11th Cir. 1998) (stressing "that the heightened pleading requirement is the law of this Circuit"). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). Nevertheless, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

**The Medical Defendants' Motion**

Defendants Hemphill, Kovach, Otwell and Turner seeks dismissal of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(g) and Federal Rule of Civil Procedure 12(b)(6). *See generally* Medical Defendants' Motion (Doc. #112). In particular, the Medical Defendants point out that the following suits filed by Plaintiff have been dismissed as meritless: case numbers 95-cv-6950, 00-cv-0101, and 03-cv-60739 filed in the United States District Court for

-10-

the Southern District of Florida. Additionally, Defendants point out that the Jacksonville Division of this Court found Plaintiff had abused the judicial process in case number 01-cv-01053, and this court denied Plaintiff's *motion to proceed in forma pauperis* due to his three strike status in case number 2:07-cv-603.[6]

Alternatively, the Medical Defendants seek dismissal pursuant to Rule 12(b)(6) because the Amended Complaint fails to state a claim either under the First or Eighth Amendment. Doc. #112 at 5-6. Defendants contend that Plaintiff fails to articulate any factual assertions in support of his First Amendment retaliation claim. *Id.* at 5. Instead, Plaintiff alleges in a wholly conclusory fashion that he was transferred from Charlotte Correctional to Santa Rosa Correctional to dissuade future grievances and lawsuits against the Department. *Id.* Similarly, the Medical Defendants argue that the Amended Complaint fails to state an Eighth Amendment claim. Defendants submit that Plaintiff essentially claims that the crushing of his hypertension medications caused his throat to become inflamed, but fails to

---

[6]Defendants incorrectly contend that the Court dismissed two cases filed by Plaintiff due to his three-strike status, and reference the cases by their Westlaw cite. Medical Defendants Motion at 3-4. This Court only deemed Plaintiff a three-striker in one case, case number 2:07-cv-603. The Westlaw cites referenced by Plaintiff are to the Court's January 10, 2008 Order, dismissing case number 2:07-cv-603 (2008 WL 141491) and, to the Court's January 30, 2008 Order, denying Plaintiff reconsideration of its January 10, 2008 Order of dismissal in case number 2:07-cv-603 (2008 WL 276092).

present any evidence in support of this assertion. Defendants note that Plaintiff attributes liability to the nursing staff for their failure to follow instructions that allegedly were ordered by an unidentified doctor. Additionally, Defendants point out that Plaintiff refused to accept his medications in crushed form, was seen regularly by medical staff, and, Plaintiff's medications were eventually ordered in whole form, after Plaintiff was seen and examined by Dr. Hemphill. Further, as set forth in the Amended Complaint, Plaintiff's hypertension was monitored on a regular basis.

**The Department's Motion**

Defendants, the Florida Department of Corrections, Secretary Walter A. McNeil, and A.L. Johnson, in their Motion to Dismiss (Doc. #113) seek dismissal on the basis that Plaintiff has failed to exhaust his administrative remedies within the Florida Department of Corrections. Doc. #113 at 1. Alternatively, the Department submits that Plaintiff's Amended Complaint fails to state a cause of action upon which relief can be granted and/or fails to state a claim for injunctive relief. *Id.* at 2. In support, the Department argues that Plaintiff predicates liability upon the Florida Department of Corrections through the Secretary on the basis that the Secretary is "individually, supervisory and/or vicariously" liable under Florida law. *Id.* (*citing* Plaintiff's Amended Complaint at 8). The Department points out that the

Amended Complaint contains no allegations of a custom or policy, and otherwise fails to allege a causal connection between any of the Defendants and the actions of which Plaintiff complains.  *Id.* at 5.

**PHS' Motion**[7]

Prison Health Services, Inc. adopts the Medical Defendants' Motion in its Motion to Dismiss Plaintiff's Amended Complaint (Doc. #115).  *See generally* PHS Motion (Doc. #115) at 1.  PHS moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) for the reasons set forth in the Medical Defendants' Motion.  *Id.* Additionally, PHS submits that Plaintiff has failed to allege a custom or policy of PHS that caused Plaintiff's alleged constitutional deprivation.  *Id.* at 2.

### III. Applicable Law

Section 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  To establish a claim under § 1983, plaintiff must prove that: (1) defendant deprived him of a right secured under the

---

[7]PHS attaches to its Motion the Affidavit of Britt Herron, Professional Liability Litigation Manager for PHS, for the purpose of verifying that PHS' contract with the Department terminated on November 20, 2006. Similarly, Plaintiff attaches his own Affidavit to his Opposition to PHS' Motion (Doc. #122).  Because the Court considers PHS's Motion as brought pursuant to Rule 12(b)(6), the Court will not consider either Affidavit in ruling on PHS' Motion.

Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001).

A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-692 (1978); *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003); *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Rather, to support a claim of liability against a supervisor, the complaint must allege "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation." *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003). Alternatively, the complaint must include allegations of a policy, custom or practice that was the "moving force" behind any alleged misconduct. Monell, 436 U.S. 658, 693-94; *see also Jones v. Cannon*, 174 F.3d 1271, 1292 (11th Cir. 1999).

### A. Deliberate Indifference Medical Care

"[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Campbell v. Sikes*, 169 F.3d 1353 (11th Cir. 1999). In order to state a claim for a violation under the

Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. This showing requires a plaintiff to satisfy an objective and a subjective inquiry. *Farrow,* 320 F.3d at 1243 (citing *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)).

The objective inquiry requires that a plaintiff first show that he had an "objectively serious medical need." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.*

The subjective inquiry requires that a plaintiff establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) conduct that is more than gross negligence. *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).

The course of medical treatment chosen by a medical professional and a medical official's decision such as whether to

order an x-ray or other additional diagnostic tests are "[c]lassic example[s] of matters for medical judgment." *Estelle,* 429 U.S. at 107. Thus, no constitutional violation exists where an inmate and medical officials merely disagree as to what is the proper course of medical treatment. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Instead, treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.*

### B. Retaliation

To establish a retaliation claim, the inmate must demonstrate that: "first, his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, . . . a causal connection between the retaliatory actions and the adverse affect on speech." *Douglas v. Yates* 535 F.3d 1316 1321 (11th Cir. 2008)(citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). An inmate's constitutionally protected "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Douglas*, 1321 (2008)(quoting *Boxer v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)). Thus, an essential element of a First Amendment retaliation claim is the

existence of a retaliatory motive.  *See Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir. 1998) ("To succeed in a section 1983 suit based on a claim of retaliation for speech, the plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision.").  *See also Farrow v. West*, 320 F.3d 1235, 1240 (11th Cir. 2003).

A plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive.  *Crawford -El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted).  In essence, a plaintiff must be able to show that a defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights.  *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).  Additionally, a plaintiff must show that he was "penalized for exercising the right of free speech."  *Brown v. Mache*, 233 Fed. Appx. 940, 941 (11th Cir. 2007).

Generally, an inmate does not have a constitutionally protected liberty interest against being transferred to another institution, even if less agreeable to the inmate.  *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).  Officials, however, may not transfer an inmate as retaliation for exercising his right to file grievances against officials at an institution.

Courts are not to infer causation or construe legal conclusions as facts.  *Aldana v. Del Monte Fresh Produce, N.A.,*

*Inc.*, 416 F.3d 1242 (11th Cir. 2005). Further, courts should give deference to prison officials when evaluating whether there was legitimate penological reasons for the alleged retaliatory conduct. *Sandin v. Conner*, 515 U.S. 472, (1995).

### IV. Findings of Fact and Conclusions of Law

At the outset, the Court will deny the Medical Defendants' motion to dismiss the Amended Complaint to the extent that it seeks dismissal based upon Plaintiff's three-strike status. Notably, case number 2:07-cv-603 was filed after the instant action. Further, in his initial complaint (Doc. #1, Complaint), Plaintiff alleged that he was in imminent danger. *See* Complaint at 13. Nor is the Court persuaded that Plaintiff failed to exhaust his administrative remedies as argued by the Department in its motion to dismiss. The Department vaguely claims that Plaintiff has "failed to show the proper exhaustion of remedies" and questions "whether the Plaintiff provided adequate, timely information in the grievances." Department's Motion at 4. The Department fails to specify what additional steps Plaintiff was required to take to exhaust his remedies, and fails to explain what additional information Plaintiff should have provided in his grievances to render the grievances inadequate. Based upon the review of the numerous grievances attached to the Amended Complaint, the Court finds the grievances adequately notified the Department of the facts giving rise to his claims. *Goebert v. Lee County*, 510 F.3d

1312, 1325 (11th Cir. 2007). Nonetheless, as more fully set forth below, the Court finds that the Amended Complaint is due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for relief under either the Eighth or First Amendment as to any of the named Defendants.

### A. Medical Indifference/Eighth Amendment

Assuming *arguendo* that Plaintiff's hypertension and his inflamed throat[8] constitute serious medical conditions, the Amended Complaint nonetheless fails to state an Eighth Amendment claim against any of the Defendants, including Defendants Vivian and Schnitzer, who have not been served with the Amended Complaint. The gravamen of Plaintiff's Amended Complaint is that his hypertension medication was improperly administered in a crushed form beginning on October 16, 2006. Plaintiff surmises that, due to the crushing of his medications, his throat became inflamed on April 4, 2007. Plaintiff acknowledges that, on May 25, 2007, his medications again were administered in whole form.

Whether Plaintiff's medications should have been administered crushed or in whole form is "a simple difference in medical opinion between the prison's medical staff and the inmate" regarding the

---

[8]While Plaintiff's hypertension clearly qualifies as a serious medical condition, *see Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)(recognizing that a serious medical condition is "one that has been diagnosed by a physician as mandating treatment"), the Court will assume Plaintiff's throat inflamation qualifies as well, for purposes of this Order.

course of treatment and does not state an Eighth Amendment claim. *Harris v. Thigpen*, 941 F.2d at 1505.  To the extent that Plaintiff claims that he suffered adverse reactions from not receiving his hypertension medication, Plaintiff acknowledges that he voluntarily refused to take his hypertension medication, despite the nurses urging him to take it.  Plaintiff further admits that he was examined each time he sought medical care, whether he sought medical attention for symptoms associated with his hypertension, his throat, or when he complained of sinus problems.  Plaintiff states that at each visit his vitals were checked, and his blood-pressure was monitored regularly.  Plaintiff does not allege that medical treatment was ever delayed or denied by any Defendant.  Rather, Plaintiff contends that it was improper for his medication to be administered in a crushed form.  Assuming Plaintiff is correct, at most, Plaintiff alleges a claim of medical negligence, not deliberate indifference.

Further, the Amended Complaint fails to allege that either Defendant McNeil or Defendant Johnson were in any way directly involved with Plaintiff's medical treatment.  In fact, as attested to by the response to the grievances, the Department is not involved in inmate health care issues.  Rather "[i]t is the responsibility" of the "Chief Health Care Officer to determine the appropriate treatment regimen" for an inmate's medical conditions. Exhibit A to Amended Complaint (Doc. #1-2 at 4).

Nor does Plaintiff allege that either the Florida Department of Corrections or PHS have an official policy or custom that caused his injuries. *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 658, 693-94. Further, the United States Supreme Court has soundly rejected the theory of *respondeat superior* as a basis for liability under § 1983. *Id.*

Consequently, the Court finds that the Amended Complaint fails to allege that any of the Defendants, in either their individual or official capacities were deliberately indifferent to Plaintiff's serious medical condition. Thus, the Court finds that Plaintiff's Amended Complaint fails to state a claim for relief under the Eighth Amendment and is subject to dismissal under Rule 12(b)(6).

**B.    Retaliation/First Amendment**

With regard to Plaintiff's First Amendment retaliation claims, the Amended Complaint fails to allege any facts that associate any of the Defendants with any retaliatory act. First, Plaintiff's grievance attached to the Amended Complaint generally alleges that his medications were being crushed out of "reprisal for his writing of grievances concerning his medical complains [sic]." Exhibit A to Amended Complaint (Doc. #1-2 at 1). In response, officials advised Plaintiff that his hypertension was not being controlled when his medications were administered whole, so his medications were being crushed for medical purposes - - to be more effective to treat his hypertension. *Id.* at 2. Plaintiff fails to show a

causal link between the decision to crush his medications and the unidentified grievances he wrote concerning his medical care. In particular, Plaintiff does not specify when he wrote these previous grievances or what medical care rendered by whom was inadequate to warrant him grieving the matter. Further, accepting the facts set forth in the attachment to Plaintiff's Amended Complaint as true, officials offered a valid reason as to why Plaintiff's medications were being administered in a crushed form. Thus, the Amended Complaint makes only conclusory allegations of a retaliatory motive; it does not allege sufficient facts to raise this conclusion above a speculative level.

Next, Plaintiff simply alleges that he was transferred to another institution to dissuade his grievance writing. Plaintiff again does not allege who ordered his transfer and does not articulate any facts to connect the grieving of his medical care with his eventual transfer. In fact, more than six months passed from the date of Plaintiff's last grievance (May 2, 2007) and the date of Plaintiff's transfer (December 19, 2007). Plaintiff's bald and conclusory assertion that his transfer was for retaliatory purposes, without any factual predicate, is insufficient to raise his right to relief above a speculative level. See *Ashcroft v. Iqbal*, 129 S.Ct. at 1951. Thus, the Court finds the Amended Complaint fails to state a First Amendment claim against any of the Defendants.

ACCORDINGLY, it is hereby **ORDERED and ADJUDGED:**

1.   Defendants Hemphill, Kovach, Otwell, and Turner's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #112), Defendants the Florida Department of Corrections, Secretary Walter A. McNeil, and A.L. Johnson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #113), and Prison Health Services, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. #115) are **GRANTED** and Plaintiff's Amended Complaint is dismissed pursuant to Rule 12(b)(6).

2.   Plaintiff's Amended Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) against Defendants Vivian and Schnitzer.

3.   The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this 7th day of July, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record